UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARTAJ S.,<br><br>  Petitioner,<br><br>  v.<br><br>TONYA ANDREWS, Golden State Annex Detention Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>  Respondents. | No.  1:25-cv-01669-KES-EPG (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 2 |

  This habeas action concerns the re-detention of petitioner Sartaj S., a noncitizen who was detained and released in 2022 then recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 2. For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

**I.     Background**[2]

Petitioner is a 33-year-old asylum-seeker from India who entered the United States on April 16, 2022. Doc. 1 at ¶ 35. Immigration authorities detained petitioner for three days. *Id.* ¶ 36. On April 19, 2022, immigration officials paroled petitioner from custody pursuant to 8 U.S.C. § 1182(d)(5)(A). *See* Doc. 1-7, Ex. A. Immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)). Such release therefore reflects a determination that the noncitizen is not a danger to the community or a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

As a condition of his release, petitioner was required to enroll in the Intensive Supervision Appearance Program ("ISAP"), and he was provided a form outlining the conditions of that program. *See* Doc. 1-5, Ex. F. That form instructed petitioner to report to the San Francisco Immigration and Customs Enforcement ("ICE") Office on May 3, 2022. *Id.* He was also required to complete virtual check-ins via a mobile phone application. *Id.* Petitioner was later served a notice to appear, placing him in removal proceedings pursuant to 8 U.S.C. § 1229a. *See* Doc. 1-7, Ex. A.

Following his release, petitioner lived in California with his wife and daughter. Doc. 1-6, Sartaj S. Decl. at 2. His wife gave birth to their second daughter in 2023. Doc. 1-4, Ex. D. Petitioner was granted work authorization and worked as a truck driver to provide for his family. Doc. 1 at ¶ 2. He became an active member of and volunteered at a Sikh temple. Doc. 1-3, Ex. C. Petitioner sought relief in his removal proceedings by filing a petition for asylum. Doc. 1 at ¶ 38. Respondents do not dispute petitioner's assertion that he maintained a clean criminal record while in the United States and complied with all requirements of his release. Doc. 1 at

---

[2] The facts set out in this section come from petitioner's verified petition and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

¶¶ 6, 37–38; *see* Doc. 8.

On October 29, 2025, petitioner requested approval from ICE to travel to a family wedding. Doc. 1 at ¶ 39. ICE approved the request and instructed petitioner to upload a check-in photograph on November 3, 2025, when he returned. *Id.* Petitioner reports that, when he returned, he completed the check-in several minutes late.[3] *Id.* ¶ 40. On November 8, 2025, ICE agents arrested petitioner at his home. *Id.* ¶ 41. He was transported to Golden State Annex, where he remains detained. *Id.*

On November 28, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that his detention violated the Due Process Clause of the Fifth Amendment. Respondents filed an opposition on December 8, 2025. Doc. 8. Petitioner filed a reply on December 11, 2025. Doc. 9.

## II. Conversion to a Motion for Preliminary Injunction

The Court directed the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether they requested a hearing on the motion. Doc. 5. Respondents did not request oral argument, but they oppose the conversion of the motion to one for a preliminary injunction, requesting that the Court hold the case in abeyance pending the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock*, No. 25-6842, which they indicate is set for oral argument in February 2026. Doc. 8 at 1–2. While it may be appropriate to defer further briefing on the petition itself, the Court declines to further hold in abeyance a decision on the preliminary injunction given the nature of the relief sought and petitioner's showing. Additionally, the Court notes that the issue raised in the district court in *Rodriguez Vazquez* appears to concern whether 8 U.S.C. § 1225(b)(2)(A) could be applied to noncitizens living in the country for many years. *See Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025). But here petitioner raises a constitutional claim based on the liberty interest that developed during his over three and a half years on release, and petitioner argues that the government may not re-detain him without a showing at a pre-

---

[3] Respondents do not allege that this was a violation of the terms of petitioner's release. *See* Doc. 8.

3

1  deprivation hearing that he is either a flight risk or a danger to the community. *See* Doc. 1 at
2  ¶¶ 48–57; Doc. 2 at 13–20. Given that the standard for issuing a temporary restraining order and
3  preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d
4  832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in
5  opposition, *see* Doc. 8, petitioner's motion is converted to a motion for preliminary injunction.

### III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### IV. Discussion

#### a. Likelihood of Success on the Merits

Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger. Doc. 2 at 13–20. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D.

Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).[4]

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).[5]

Petitioner's humanitarian parole similarly allowed him to live and work in his community and to provide for his family while he sought relief in his removal proceedings. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). And the evidence shows that petitioner complied with the terms of his release on parole.

---

[4] Respondents' only argument in response is that petitioner is subject to mandatory detention under the terms of 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 8. But, as noted above, petitioner raises a constitutional challenge to his re-detention without a pre-deprivation hearing.

[5] In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

5

1   Respondents argue that they nonetheless had discretion to re-detain petitioner under
2   § 1225(b). Doc. 8 at 2. In *Ramirez Tesara v. Wamsley*, the District Court for the Western District
3   of Washington rejected a similar argument: the court found that the government's "argument does
4   not explain why [immigration authorities] found Petitioner to be eligible for parole [when it
5   release him a year earlier], but not the following year even after he had established deep ties to
6   the community . . . and timely filed an asylum application." *Id.* at *3.  And while immigration
7   officials may have had discretion over the initial decision to detain or release petitioner, their
8   decision to release an individual from custody creates "an implicit promise" upon which an
9   individual may rely: that his liberty "will be revoked only if [he] fails to live up to the . . .
10  conditions [of release]." *Morrissey*, 408 U.S. at 482. As other courts have found in similar
11  circumstances, "even when ICE has the initial discretion to detain or release a noncitizen pending
12  removal proceedings, after that individual is released from custody she has a protected liberty
13  interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal.
14  2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the
15  requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).
16  The Court finds that petitioner has a protected liberty interest in his release. *See*
17  *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,
18  2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]
19  is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL
20  1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have
21  been released have a strong liberty interest). The Court must therefore determine what process is
22  due before the government may terminate his liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through

6

>the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over three-and-a-half years. During that time, he established ties in the community, his wife gave birth to their second daughter, and petitioner worked and provided for his family. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and respondents do not dispute that he complied with all terms of his release. *See* Doc. 8. As there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Petitioner is therefore likely to succeed on his habeas claim that his re-detention without a pre-deprivation hearing violates his due process rights.

### b. Irreparable Harm

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable

8

1  harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can re-detain petitioner at all, but whether it can re-detain petitioner without a bond hearing pending his removal proceedings. Faced with a choice "between [minimally costly procedures] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

///

///

**V.   Conclusion and Order**

Accordingly:

1. Petitioner's motion for a preliminary injunction, Doc. 2, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

5. This matter is referred to the assigned magistrate judge for further proceedings including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:   December 31, 2025

UNITED STATES DISTRICT JUDGE

10